UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

KENNETH ALLEN RUSSELL #390475,

    Plaintiff,    Case No. 2:09-cv-158

v.    Honorable R. Allan Edgar

PATRICIA CARUSO, et al.,

    Defendants.

_____/

## **OPINION**

    Plaintiff Kenneth Allen Russell #390475, an inmate currently confined at the Ojibway Correctional Facility (OCF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections (MDOC). Specifically, Defendants include MDOC Director Patricia Caruso, Warden Gerald Hofbauer, J. Rubick, Steven Neimi, Fred Govern, K. Kerso, and M. Laitinen.[1]

    Defendants confiscated several Uniform Commercial Code documents as contraband, which Plaintiff was attempting to use in order to gain his release from prison. Plaintiff states that on May 23, 2009, he had Defendant Govern notarize an "Administrative Remedy in Admiralty," which used UCC finance statements and security agreements as an exhibit. Defendant Govern asked to see the document, which Plaintiff claims was unlawful. Defendant Govern explained that he was required to check that all outgoing mail qualified for notary services or expedited handling. Defendant Govern did notarize the document and sent it out for Plaintiff.

---

[1] Kristen Schidler, J. Lotz, and James Armstrong remain unserved and are not currently parties to this action.

Plaintiff seeks a ruling from this court that his use of the UCC-1 Finance Statement and other documents is a lawful and legal remedy and that he has a due process right to use the documents to sue and Michigan Department of Corrections (MDOC). Plaintiff also seeks a full disclosure of the monetary profits gained by the MDOC and Defendants Caruso, Rubick, Govern, and Niemi as a result of one year of Plaintiff's incarceration. In addition, Plaintiff seeks to prosecute Defendants for alleged violations of RICO, as well as damages pursuant to 42 U.S.C. § 1983.

Presently before the Court is the Defendants' Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other

evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants state that they are entitled to summary judgment because their conduct did not violate Plaintiff's right of access to the courts. In support of this assertion, Defendants offer their affidavits and other exhibits. Defendant Rubick attests that on June 12, 2009, he issued Plaintiff a notice of package / mail rejection with regard to four envelopes containing identical paperwork, including UCC financing statements. Defendant Rubick noted that the mail appeared to be for the purposes of operating a business enterprise, which is not allowed. (Defendants' Exhibit B, ¶ 3.) In addition, Defendants offer a copy of MDOC Policy Directive 05.03.118 ¶ D(7), which specifically prohibits mail for the purpose of operating a business. (Defendants' Exhibit B-1.)

Defendant Niemi attests that on June 22, 2009, officials at MBP were advised by "Norma Killough of Central Office" that the MDOC Director's Office had received documents from Plaintiff which were UCC related and violated MDOC policy. Ms. Killough identified the documents as a "Commercial Affidavit of Truth, Affidavit of Truth, True Bill (first and second notice), Opportunity to Cure and Exhibits (including copies of the UCC1 and UCC3, recorded with the SOS by [Plaintiff])." The documents stated that Plaintiff was the "Paramount Lien Holder / Secured Party Creditor of the debtor (Plaintiff), and that Defendants Caruso, Hofbauer, and numerous other prison officials were in default and should be held in "Commercial Dishonor" for non-response / non-settlement." Finally, the documents indicated that the debt was accumulating at the rate of $1.5 million per day with more than $65 million due. The documents had been filed with the Michigan Secretary of State UCC Office. (Defendants' Exhibit C, ¶¶ 5-6.) Because the documents violated MDOC policy, Plaintiff's property was searched later that day in an effort to determine if Plaintiff

possessed any other prohibited material. Plaintiff's paperwork and typewriter were confiscated and a notice of intent to conduct an administrative hearing and property receipt were provided to Plaintiff. (Defendants' Exhibit C, ¶ 7.) On September 29, 2009, Defendant Laitinen conducted a hearing and Plaintiff's property was returned to him, with the exception of a single document, entitled "Surety of Bond," which bore the forged signature of Defendant Caruso. (Defendants' Exhibit C, ¶ 8.)

Defendants offer a copy of the administrative hearing report, which shows that Plaintiff was claiming three pending court actions and was asserting a right to use the UCC to get out of prison. The memory of Plaintiff's typewriter was reviewed, as well as the contents of the confiscated paperwork. As noted above, all of Plaintiff's property was returned to him at the conclusion of the hearing, except for the "surety of bond" with the forged signature of Defendant Caruso. (Defendants' Exhibit C-3.) In the "reasons for findings" section, Hearing Officer Mohrman stated that Plaintiff has falsified Defendant Caruso's signature and was using the paperwork to make it look as if Defendant Caruso had admitted to his claims. (Defendants' Exhibit C-5.)

Defendant Kero attests that on September 30, 2009, she received a photocopy request from Plaintiff for copies of three documents, which Plaintiff allegedly required for the instant civil rights action. However, Plaintiff only had $0.08 in his prison account, which would not cover the cost of the copies. Pursuant to Policy Directive 05.03.116 ¶ M, Plaintiff was required to present documentation showing that the copies were necessary in order to receive a loan to pay for the cost of his copies. Plaintiff was instructed regarding the policy requirement, but Plaintiff failed to resubmit his copy request with the necessary documentation. Defendant Kero states that she sent the documents back to Plaintiff via the Resident Unit Manager's mailbox. The documents were enclosed in an envelope with the denial stamped to the outside of the envelope. (Defendants' Exhibit E, ¶¶ 3-4.)

On October 14, 2009, Plaintiff presented Defendant Kero with a court order to have copies made of the instant lawsuit, as well as 44 pages of documents. Defendant Kero reviewed the documents and photocopied 30 of the 44 pages presented. Defendant Kero made two sets of copies of the 30 pages copied and sent a total of 60 photocopied pages to Plaintiff on October 16, 2009. However, Defendant Kero asserts that she never received the return signed photocopy receipt from Plaintiff. (Defendants' Exhibit E, ¶ 6.) The 14 page document not copied by Defendant Kero was entitled a "True Bill," which was considered contraband. Defendant Kero completed a notice of intent to conduct a hearing on the document and placed it in Defendant Niemi's mailbox on Friday, October 16, 2009, at approximately 4:30 p.m. Plaintiff was transferred to the Ojibway Correctional Facility (OCF) on Monday, October 19, 2009, at approximately 11:30 a.m. (Defendants' Exhibit E, ¶¶ 8-9.) Defendants attach a copy of the Notice of Intent regarding the 14 page document, which states that submitting a "bill" for the purpose of collecting money while in a correctional facility is essentially operating a business, which is prohibited. (Defendants' Exhibit E-6.)

In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's fundamental right of access to the courts. While the right of access to the courts does not allow a State to prevent an inmate from bringing a grievance to court, it also does not require the State to enable a prisoner to discover grievances or litigate effectively. *Lewis v. Casey*, 518 U.S. 343 (1996). Thus, *Bounds* did not create an abstract, free-standing right to a law library, litigation tools, or legal assistance. *Id.* at 351 (1996). Further, the right may be limited by legitimate penological goals, such as maintaining security and preventing fire or sanitation hazards. *See Acord v. Brown*, No. 91-1865, 1992 WL 58975 (6th Cir. March 26, 1992); *Hadix v. Johnson*, No. 86-1701, 1988 WL 24204 (6th Cir. March 17, 1988); *Wagner v. Rees*, No. 85-5637, 1985 WL 14025 (6th Cir. Nov. 8, 1985).

To state a claim, an inmate must show that any shortcomings in the library, litigation tools, or legal assistance caused actual injury in his pursuit of a legal claim. *Lewis*, 518 U.S. at 351; *Talley-Bey*, 168 F.3d at 886; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994). Particularly, an inmate cannot show injury when he still has access to his legal materials by request, *Kensu*, 87 F.3d at 175, when he fails to state how he is unable to replicate the confiscated documents, *Vandiver*, 1994 WL 677685, at *1, or when he could have received the material by complying with the limits on property, e.g., where he had the opportunity to select the items that he wanted to keep in his cell, or when he had an opportunity to purchase a new footlocker that could hold the property. *Carlton v. Fassbender*, No. 93-1116, 1993 WL 241459, at *2 (6th Cir. July 1, 1993).

The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*,

518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

As noted by Defendants, it is unclear from Plaintiff's complaint exactly what injury he is asserting in this case. Plaintiff mentions an "Administrative Remedy in Admiralty" pending in the 46th Circuit Court of Michigan, and states that the court clerk wrote to him saying that she could not return a time stamped copy because she had received only two copies. However, it is clear that the alleged shortcoming did not prevent Plaintiff from filing this lawsuit. Because the First Amendment does not require the State to enable a prisoner to discover grievances or litigate effectively once his case has been filed, such an allegation is not sufficient to state an access to courts claim. *Lewis*, 518 U.S. at 354. Plaintiff also asserts that certain documents were not copied for this case. However, as noted above, these documents were described by Plaintiff as a "True Bill" directed towards Defendants Caruso, Hofbauer, Niemi, Govern, and Schidler. Plaintiff fails to allege facts showing that this document was necessary for maintaining the instant case and, as previously stated, the First Amendment does not require the State to enable a prisoner to discover grievances or litigate effectively once his case has been filed. Because the record shows that Plaintiff did not suffer an actual injury to a non-frivolous direct appeal, habeas corpus application, or civil rights claim, Defendants are entitled to summary judgment on his access to courts claims.

Nor does the record support Plaintiff's claim that the confiscation of documents violated Plaintiff's First Amendment rights to possess mail and / or reading material. In *Jones v. Caruso*, the Sixth Circuit held that UCC-related materials are not "legal mail" and are not subject to heightened review when withheld, but nevertheless applied the *Turner* factors to conclude that the policy barring such materials was overbroad. *Jones v. Caruso*, 569 F.3d 258, 268 (6th Cir. 2009). However, as noted above, the UCC documents were confiscated by Defendants in this case pursuant

7

to a policy barring prisoners from operating a business while incarcerated, and not pursuant to a broad policy prohibiting all UCC materials. The court notes that there are four factors relevant to the inquiry of whether the confiscation is reasonably related to legitimate penological interests: (1) whether there is a valid, rational connection between the confiscation and the legitimate governmental interest which it allegedly furthers, (2) whether there are alternative means by which the inmate may exercise the right impinged, (3) what impact the accommodation of the inmate's constitutional right will have on guards, other inmates, or the allocation of prison resources generally, and (4) the existence or absence of ready alternatives to the regulation in question. *Turner v. Safley*, 482 U.S. 78, 88-91 (1987). It is clear that Plaintiff was attempting to use the UCC documents to get money from state officials. Preventing such conduct was patently within the reasonably legitimate penological objectives of the prison officials. Therefore, there was no violation of Plaintiff's First Amendment rights in this case.

Defendants assert that they are entitled to summary judgment on Plaintiff's Fourth Amendment claims because their conduct did not constitute an unreasonable search and / or seizure. The Fourth Amendment protects against unreasonable searches and seizures by a representative of the government. *Hudson v. Palmer*, 468 U.S. 517, 522-526, 528 n 8 (1984). In *Hudson*, 468 U.S. at 525-526, the Supreme Court held that prisoners have no reasonable expectation of privacy in their cells, and upheld unannounced cell searches. Further, in *Hudson*, the United States Supreme Court noted that the same reasons which led it to conclude that the Fourth Amendment did not prohibit searches of a prisoner's cell, applied with equal force to seizures. *Id.* at 528 n 8. The Court stated that "[p]rison officials must be free to seize from cells any articles which, in their view, disserve legitimate institutional interests." *Id.* The Supreme further stated that although the Fourth Amendment does not protect against seizures in a prison cell, an inmate's property cannot be

8

destroyed with impunity, noting that the respondent in *Hudson* had adequate state remedies even apart from inmate grievance procedures. *Id.* Therefore, Defendants are entitled to summary judgment on Plaintiff's Fourth Amendment claim.

Defendants Caruso and Hofbauer further assert that they are entitled to summary judgment for lack of personal involvement. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable.

9

*See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendants Caruso and Hofbauer were personally involved in the activity which forms the basis of his claim. The only roles that Defendants Caruso and Hofbauer had in this action involve the denial of administrative grievances or the failure to act. Defendants Caruso and Hofbauer cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000). Accordingly, the Court concludes that Plaintiff's claims against Caruso and Hofbauer are properly dismissed for lack of personal involvement.

Plaintiff also claims that Defendants' conduct constituted racketeering in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, et seq. In order to prevail in a civil RICO claim, Plaintiff must prove three elements: (1) the identification of a person, who, (2) through a pattern of racketeering activity, (3) uses or invests income derived therefrom to acquire an interest in or to operate an enterprise engaged in interstate commerce, or acquires, maintains an interest in, or controls such an enterprise. *See H.J., Inc. v. Northwestern Bell Tel. Co.*,

492 U.S. 229, 232 (1989); *see also Call v. Watts*, No. 97-5406, 1998 WL 165131, at * 2 (6th Cir. Apr. 2, 1998); *Michalak v. Edwards*, Nos. 96-1970, 96-1972, 1997 WL 561424, at * 3 (6th Cir. Sept. 9, 1997); *Mitchell v. Biomagnetic Resonance, Inc.*, No. 96-1579, 1997 WL 259367, at * 4 (6th Cir. May 15, 1997). To prove a pattern of racketeering activity, it is necessary for Plaintiff to present evidence of at least two predicate acts of racketeering activity. *H.J. Inc.*, 492 U.S. at 237.

In this case, Plaintiff alleges that he was deprived of certain UCC documents because they violated MDOC policy. Plaintiff's allegations fail to give rise to a claim under RICO because the facts in Plaintiff's complaint do not disclose the existence of an "enterprise" affecting interstate commerce or any arguable pattern of racketeering activity. *See United States v. Jenkins*, 902 F.2d 459 (6th Cir. 1990). Therefore, the court concludes that Defendants are entitled to dismissal of Plaintiff's claims under RICO.

Plaintiff claims that Defendants violated his due process rights because he did not receive a notice of intent for the property confiscated in the mail room until five days after the confiscation occurred. However, as noted above, the record in this case establishes that if Plaintiff had a right implicating the due process protections of the Constitution, Plaintiff received due process of law. In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. The Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9 (1980). "[T]he deprivation by state action of a constitutionally protected interest

in "life, liberty or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original). Further, an inmate has no right to counsel in disciplinary proceedings. *Wolff v. McDonnell*, 418 U.S. 539, 569-70 (1974); *Franklin v. Aycock*, 795 F.2d 1253, 1263 (6th Cir. 1986). The constitution does not require that Plaintiff receive a notice of intent on the same date that his property was confiscated, but only that he receive the opportunity to convince an unbiased decision maker that he was entitled to possess the property. Plaintiff received such an opportunity. Therefore, Defendants are entitled to summary judgment on Plaintiff's due process claims.

Defendants note that in his original complaint, Plaintiff claims that he suffered equal protection violations. The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff does not suggest that he is a member of a suspect class, and "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir.1998). Nor does Plaintiff state that he was treated differently from other similarly situated prisoners.

Defendants assert that they are entitled to summary judgment on Plaintiff's official capacity claims against them because such claims are barred by the Eleventh Amendment. Any claims against the individually-named Defendants in their official capacities do not state a claim upon which relief can be granted. *See Will v. Michigan Department of State Police*, 491 U.S. 58 (1989) (claims against a state agency or an official in his/her official capacity are claims against the state, and are not claims against a "person" subject to Section 1983 liability); *Frederick v. Abramajtys*, No. 94-

1935, 1995 WL 564321, **1 (6th Cir. Sept. 21, 1995) (unpublished). Moreover, the Eleventh Amendment bars suit against the State or one of its agencies in federal court unless the state has given express consent, regardless of the relief sought. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), overruled in part on other grounds, *Will*, 491 U.S. 58; *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (State and Board of Corrections).[2] The State of Michigan has not consented to civil rights suits in the federal courts. *See Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). The Eleventh Amendment therefore bars official-capacity suits for damages against its employees. Therefore, any official capacity claims are properly dismissed.

Defendants also claim Plaintiff's individual capacity claims are barred by qualified immunity because Plaintiff has failed to show a violation of clearly established law. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

---

[2] The Sixth Circuit has held that since an official capacity suit for retroactive relief, such as monetary damages, is deemed to be against the State, whose officers are the nominal Defendants, the claim is barred by the Eleventh Amendment. *Doe v. Wigginton*, 21 F.3d 733, 736-737 (6th Cir. 1994).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*. As noted above, Defendants did not violate Plaintiff's constitutional rights. Accordingly, they are entitled to qualified immunity.

In light of the foregoing, the court concludes that Plaintiff has failed to sustain his burden of proof in response to Defendant's motion for summary judgment. Accordingly, Defendant's Motion Summary Judgment (docket #31) will be granted and this case will be dismissed in its entirety. In addition, Plaintiff's pending motion for discovery (docket #38) is denied as moot.

A Judgment consistent with this Opinion will be entered.

Dated: 9/13/2010 /s/ R. Allan Edgar
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE